## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| DANIELLE KITCHIN and DANA B. KITCHIN, Co-Personal Representatives and heirs of the ESTATE OF DANA A. KITCHIN,<br><br>Plaintiffs,<br><br>v.<br><br>RANDALL LIBERTY, in his individual and official capacity as Sheriff of Kennebec County, KEN MASON, in his individual and official capacity as Sheriff of Kennebec County, KENNEBEC COUNTY, KENNEBEC COUNTY SHERIFF'S OFFICE, KENNEBEC COUNTY CORRECTIONS DIVISION, KENNEBEC COUNTY CORRECTIONAL FACILITY, KENNEBEC COUNTY COMMISSIONERS being PATSY G. CROCKETT, Kennebec County Commissioner, District 1 in her individual and official capacity; NANCY G. RINES, District 2 in her individual and official capacity; and GEORGE M. JABAR, II, District 3 in his individual and official capacity, CORRECTIONAL HEALTH PARTNERS, LLC, and JOHN AND JANE DOES 1 THROUGH 100, all whose true names are unknown, Defendants. | **COMPLAINT AND JURY TRIAL DEMAND** |

The Estate of Dana Kitchin through its attorneys, Timothy E. Zerillo, Esq., Zerillo Law Firm, LLC and John M. Burke, Esq., Caseiro Burke LLC, brings this action under the United States Constitution, 42 U.S.C.§1983, Americans With Disabilities Act and various common law claims of the State of Maine.

### I. INTRODUCTION AND OVERVIEW

1.      This is a wrongful death and survival action for compensatory, statutory, and punitive

damages against Defendants who, by virtue of their grossly negligent and wanton acts and omissions, directly and proximately caused the death of Dana A. Kitchin during his confinement in the Kennebec County Correctional Facility (*hereinafter,* the "KCCF").

2.      Plaintiffs Danielle Kitchin and Dana B. Kitchin, the Daughter, Son and Co-Personal Representatives of the Estate of Dana A. Kitchin (*hereinafter,* "the Estate"), bring the following claims on behalf of the Estate.  As alleged herein, Plaintiffs' claims arise under the statutory and common law of the State of Maine, the Maine and United States Constitutions and 42 U.S.C. §1983.  Corrections officers and medical staff at the KCCF were inadequately trained as to how and when to provide appropriate medical care.

3.      Despite his awareness that KCCF medical staff and corrections officers needed additional training to competently perform their jobs, Liberty and/or Mason and the other supervisors for the KCCF ignored the clear warning signs that a detainee soon would be severely injured, or in the case of Dana A. Kitchin, killed.

4.      The Defendants' acts alleged herein violated Dana A. Kitchin's constitutional rights to be free from excessive force and cruel and unusual punishment. Those acts, which also violated Maine common law, statutory law, and federal law, combined with the Defendants' failure to train, hire and supervise KCCF corrections officers and medical staff, were the proximate cause of the death of Dana A. Kitchin.

5.      At all times complained of herein, Dana Kitchin suffered from a serious medical need.

6.      This serious medical need was so obvious that even a layperson would recognize the need for medical attention.

7.      The Defendants had a purposeful intent and/or deliberate indifference to Dana Kitchin's

serious medical need.

8.    The Defendants had wanton disregard for Dana Kitchin's serious medical need.

9.    Alternatively, Defendants ignored Dana Kitchin's serious medical need to punish him.

## II.    JURISDICTION AND VENUE

10.    This Action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution, 42 U.S.C. §1983 and Article 1, Section 6-A of the Maine Constitution. The jurisdiction of this Court is further invoked pursuant to 28 U.S.C. §§1331.

11.    Supplemental pendent jurisdiction is based on 28 U.S.C. § 1367 because any state action stems from the same common nucleus of operative facts as the federal civil rights claim.

12.    This Honorable Court wields jurisdiction over each of the Defendants named herein pursuant to 14 M.R.S.A. §704-A in that each of the Defendants is domiciled in the State of Maine.

13.    Venue is properly laid before this Honorable Court pursuant to 28 U.S.C. § 1391 and Rule 9(a) of the rules of the United States District Court for the District of Maine in that all of the acts complained of occurred in Augusta.

## III.    THE PARTIES

14.    Plaintiff Danielle Kitchin is a citizen and resident of Somerset County, Maine.  Ms. Kitchin was qualified as a Co-Personal Representative of the Estate of Dana A. Kitchin on December 5, 2016. Ms. Kitchin brings this action as Co-Personal Representative of the Estate of Dana A. Kitchin.  Ms. Kitchin is the Daughter of Dana A. Kitchin.

15.    Plaintiff Dana B. Kitchin is a citizen and resident of Kennebec County, Maine.  Mr.

Kitchin was qualified as a Co-Personal Representative of the Estate of Dana A. Kitchin on December 5, 2016. Mr. Kitchin brings this action as Co-Personal Representative of the Estate of Dana A. Kitchin. Mr. Kitchin is the Son of the deceased.

16.     Dana A. Kitchin (*hereinafter,* the "Decedent"), was a citizen of Maine and a resident of Kennebec County until his death on December 12, 2014.

17.     Defendant Sheriff Randall Liberty (*hereinafter,* "Liberty") is a citizen and resident of Kennebec County. At all times relevant to this action, he was the Sheriff of Kennebec County. Liberty was responsible for the care and custody of inmates of the KCCF located in Kennebec County at the time the cause of action herein arose.

18.     Defendant Sheriff Ken Mason (*hereinafter*, "Mason") is a citizen and resident of Kennebec County. At all times relevant to this action, he was the Chief Deputy of Kennebec County and is currently the Sheriff of Kennebec County. Mason was and is responsible for the care and custody of inmates of the KCCF located in Kennebec County at the time the cause of action herein arose.

19.     Liberty and/or Mason were charged by law and responsible for the administration of the KCCF, and for the training, supervision and hiring of persons, agents and employees working within the KCCF, including custody officers, supervisors and deputies, nurses, doctors, emergency medical personnel, physician assistants, medical staff, mental health staff, including Defendant Does (*defined herein*).

20.     Liberty and/or Mason were responsible for the customs, policies and practices of the KCCF at the time of Mr. Kitchin's death. Liberty and/or Mason were responsible for ensuring appropriate staffing levels for qualified custodial staff at the KCCF, as well as for all shifts to be

properly supervised, trained and disciplined.

21.     Plaintiffs sue Liberty and Mason in their individual and official capacities.  At all times alleged herein, Liberty and Mason were acting within the scope of their employment and under color of law.

22.     Defendant Kennebec County, Maine (*hereinafter,* the "County"), is an incorporated regional government body responsible for supervising and operating the Kennebec County Sheriff's Office and KCCF.

23.     The County was responsible for the supervision of Liberty, Mason and the KCCF.  The County is a county organized in the State of Maine as of 1799, whose principal place of business is 125 State Street, 2nd Floor, Town of Augusta, County of Kennebec, State of Maine 04330 and is a duly organized entity of local government under Maine law. The County transacts its affairs in the County of Kennebec.

24.     Defendant Kennebec County Sheriff's Office (*hereinafter* "KCSO") is a department within the County of Kennebec which operates the KCCF and has a principal office located at 125 State Street, Town of Augusta, County of Kennebec, State of Maine 04330.  The KCSO is a duly organized entity of local government under Maine law and County code or ordinance. The KCSO transacts its affairs in the County.

25.     Defendant Kennebec County Corrections Division (*hereinafter* "KCCD") is a division of the KCSO and is part of the County local government which is operated by the KCSO. It has a principal location of 115 State Street, Town of Augusta, County of Kennebec, State of Maine 04330. KCSO is a duly organized entity of local government under Maine law and County code or ordinance. The KCCD transacts its affairs in the County.

26.     Defendant Kennebec County Correctional Facility ("KCCF") is part of the KCCD of the County which is operated by the KCSO and has a principal location of 115 State Street, Town of Augusta, County of Kennebec, State of Maine 04330. KCCF is a duly organized entity of local government under Maine law and County code or ordinance. The KCCF transacts its affairs in the County.

27.     Defendant Kennebec County Commissioners (*hereinafter* "Commissioners") are the County Commissioners. The Commissioners have a principal location of 125 State Street, 2nd Floor, Augusta, Maine 04330. Each Commissioner, Patsy G. Crockett, Nancy G. Rines and George Jabar, II are sued in their individual and official capacities. Pursuant to 30-A M.R.S.A. §61(1), each Commissioner is required to reside in the district which they represent. Each Commissioner is therefore required to reside in the County. At all times pertinent to this action, the Commissioners acted under color of state law. Each of the County Commissioners resides, is found in, has an agent, or transacts his or her affairs in the County.

28.     Defendant Correctional Health Partners (*hereinafter* "CHP") is a for-profit company organized under the laws of the State of Colorado and has a principal place of business located at 1125 17th, Street Suite 1000, City of Denver, State of Colorado 80202. CHP provides medical services to the KCCF.

29.     Defendants John and Jane Does 1 through 100 (*hereinafter*, "Defendant Does") are individuals whose names and addresses of residence are unknown. However, they include at all relevant times alleged herein, the KCCF, KCSO, KCCD, CHP, Corrections Officers, Supervisory Staff, Chief Deputies, and/or Captains in charge of assisting administration of the KCCF; making policies and/or ensuring constitutionally adequate policies were implemented and

followed; commanding relevant watches; and supervising, training, and disciplining staff members.

30.     Defendant Does include at all relevant times alleged herein, the staff of the KCCF Medical Department, along with their survivors.

31.     Plaintiffs allege on information and belief that each of the Defendant Does were employed by the KCCF, the KCSO, KCCD, and/or the County at the time of the conduct alleged herein. Plaintiffs allege that each of the Defendant Does were responsible for the training, supervision and/or conduct of KCCF employees and/or agents involved in the conduct alleged herein.

32.     Plaintiffs allege that the Defendant Does were responsible for and caused the acts and injuries alleged herein.  Plaintiffs believe and allege that each of the Defendant Does is legally responsible and liable for the incident, injuries and damages hereinafter set forth.   Each Defendant Does in this matter caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, and violation of public policy.

33.     Each Defendant Doe is liable for his or her personal conduct, vicarious or imputed negligence, fault or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care, control, or upon any other act or omission.

34.     Plaintiffs will seek to amend this Complaint as soon as the true names and identities of Defendant Does have been ascertained.

### IV.     STATEMENT OF FACTS

35.      The Decedent was detained in the KCCF on misdemeanor charges from on or about December 10, 2014, until his death, on or about December 12, 2014.

36.      On information and belief, the Decedent was being held in a cell that was located in the

intake area of the KCCF.

37.     On information and belief, the Decedent's cell was near the control center of the intake area, commonly known as the "bubble" by inmates.

38.     On information and belief, inmates held in the intake area are subject to constant supervision, including checks every 15 minutes.

39.     The Decedent was a 64-year-old man at the time of his death on or about December 12, 2014.

40.     The Decedent died while being held in the KCCF.

41.     The Decedent was known to the Defendant Does of the KCCF as he was frequently incarcerated for minor violations.

42.     On information and belief, inmates are screened at the KCCF for mental and physical conditions at the time they are admitted as inmates at KCCF.

43.     The Defendants were aware of the Decedent's physical and mental health issues at the time he was admitted as an inmate at KCCF on December 10, 2014.

44.     On or about December 11, 2014, the Decedent began calling out for help from KCCF corrections and medical staff.  He repeatedly banged on his cell door and cried for help.

45.     The Decedent cried for help and medical attention for many hours.

46.     On information and belief, the Decedent was in a great deal of pain, emotional distress and was conscious during the period that he cried out for help.

47.     On information and belief, the Decedent did everything he possibly could do to alert the KCCF staff that he needed immediate medical attention.

48.     On or about December 11, 2014, Michael Nickerson (*hereinafter,* "Nickerson") was held

in the intake area of the KCCF.

49.    On information and belief, Nickerson was placed in a cell located in the intake area where the Decedent was being held. Nickerson's cell was two cells from the Decedent's cell.

50.    Nickerson could see Decedent's arms and side profile from his cell.

51.    While in his cell, Nickerson witnessed and heard the Decedent kicking, hitting and banging on his cell door while loudly crying out for medical attention.

52.    Nickerson heard the Decedent shouting that his chest hurt as he continued to scream for medical attention.

53.    Nickerson signed a statement indicating that "For around 7-8 hrs. while waiting to be processed I heard Dana Kitchin banging and knocking on his cell door for the whole time I was in intake asking to be seen by a nurse and that he needed to be brought to the hospital.  He was ignored the whole time and the CO's said that he always acts like this and that's why they ignore him."

54.    At the time Nickerson left the KCCF intake area for his cell block, the Decedent was still loudly calling out for medical attention.  The Decedent's cries were easily heard by anyone in the intake area and throughout the KCCF.  The Decedent's calls for medical attention continued to be ignored by KCCF staff at the time Nickerson left the intake area.

55.    Nickerson never observed Defendant Does performing the mandatory 15-minute checks on the Decedent.

56.    Kevin Swift (*hereinafter*, "Swift") was held in the intake area of the KCCF on or about December 11 or December 12, 2014, after being arrested for a probation violation.

57.    Swift heard the Decedent loudly banging on his cell door and screaming for help.

58.     Swift observed a nurse come to the Decedent's cell while Swift was in the intake area. Swift heard the Decedent beg the nurse for medical attention and to be taken to the hospital. The nurse never entered the Decedent's cell and the Decedent was not taken to the hospital.

59.     On information and belief, CHP was under contract with KCCF to provide medical services to inmates housed at KCCF. CHP had a duty to provide medical attention to the Decedent, which they did not do.

60.     On information and belief, The corrections officers and medical staff at the KCCF were aware that the Decedent repeatedly asked for medical help, yet they ignored him.

61.     Decedent's need for medical attention was obvious to all those who observed him at the KCCF during the time period described by Nickerson and Swift.

62.     Swift believes that the banging and yelling by the Decedent was so loud that it could be heard on the second floor of the KCCF.

63.     Eventually, Swift noticed that all went quiet in the direction of the Decedent's cell and Swift went to sleep. The Decedent was so loud in his cries for help before that time that Swift was unable to sleep.

64.     Swift saw KCCF staff bring the Decedent's body out of his cell on a stretcher in a body bag.

65.     On or about December 12, 2014, the Decedent was found dead in his cell.

66.     On information and belief, the Decedent's cell and cell door was covered in feces and bodily fluid.

67.     On or about December 14, 2014, an autopsy of the Decedent's remains was performed by Dr. Kristen G. Sweeny of the Office of Chief Medical Examiner.

68.   Dr. Sweeny found that the Decedent suffered from a "Massive hemoperitoneum due to ruptured spleen."

69.   Had the Decedent been given emergency medical treatment promptly, his life would have been saved.

70.   The Decedent's conscious pain and suffering could have been cured by prompt medical attention.  Instead, the Decedent consciously and painfully bled to death internally over a period of many hours.

71.   On information and belief, the Defendants knew the Decedent suffered from mental illness.  Defendant Does ignored the Decedent's cries for help because they found him to be annoying and/or a nuisance.

72.   The Decedent was in excruciating pain, agony and mental anguish for many long hours before his death.

73.   Liberty, Mason, the County, KCCF, KCSO, KCCD, the Commissioners and Defendant Does were responsible for maintaining adequate staffing levels to ensure the safety of their prisoners or detainees.  That includes a responsibility that there be an appropriate number of properly trained and supervised staff on duty, including the medical staff, in each shift.  It also includes the responsibility to adequately supervise staff regarding inmate mental health issues.

74.   On information and belief, CHP was responsible for training and supervising its employees while they were assigned to the KCCF.

75.   Defendants allowed conditions at the KCCF to deteriorate causing an environment where inmate safety was disregarded.

76.   Plaintiffs allege on information and belief that Defendants, with deliberate indifference,

gross negligence, and/or wanton disregard to the safety, security, and constitutional and statutory rights of the Decedent, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, or customs and usages that caused the Decedent's death.  These policies, practices, or customs and usages, include:

a.      Selecting, retaining, and assigning employees with demonstrable propensities for misconduct;

b.      Failing to screen, hire, appoint, promote, train, supervise and discipline Defendant deputy sheriffs and medical staff who will enforce the laws and protect the constitutional rights of its citizens;

c.      Failing to adequately train, supervise, and control the correction officers and medical staff at the KCCF to deal with medical emergencies and the appropriate ways to handle detainees suffering from mental illness;

d.      Failing to enforce the provisions of the Constitution of the United States concerning the adequacy of medical care; and

e.      Failing to promulgate, distribute and enforce clear, consistent and reasonable policies concerning protocols for emergency medical treatment and the handling of difficult and problematic detainees, including detainees with mental illness issues.

77.    Plaintiffs have been physically, mentally, emotionally, and financially injured and damaged as a proximate result of the Decedent's wrongful death, including, but not limited to, the loss of Decedent's familial relationships, consortium, comfort, protection, companionship, love, affection, solace, and moral support.  In addition to these damages, Plaintiff is entitled to recover for the reasonable value of funeral and burial expenses.

78.     All of the individual Defendants were acting under color of law as employees or agents of the County, KCCF, KCSO, KCCD and/or CHP.  Their acts or failure to provide medical treatment were committed with malice and/or reckless disregard to Decedent's constitutional rights under the Constitution of the United States.

79.     Defendants' failure to provide adequate medical care to the Decedent was the proximate cause and actual cause of the Decedent's suffering and death.

80.     The Defendants' deliberate indifference to the serious medical needs of Decedent resulted in his conscious suffering and untimely and wrongful death.

81.     As a result, Plaintiffs Danielle Kitchin and Dana B. Kitchin have lost the lifelong love and companionship of their father and have also suffered pecuniary and non-pecuniary damages.

### V.     CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. Section 1983**
**Violation of the 8th and/or 14th Amendments - Failure to Provide Medical Care**
**(Against All DEFENDANTS)**

82.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

83.     Defendants failed to provide the Decedent with appropriate medical care during his medical emergency.

84.     Defendants violated the Decedent's constitutionally protected rights by engaging in various acts, including, but not limited to:

a.     Failing to provide the Decedent adequate, timely treatment for injuries or medical conditions;

b.     Failing to medically clear the Decedent prior to placement in his cell;

c.      Failing to properly treat the Decedent while he was in pain and anguish;

d.      Failing to provide the Decedent with adequate emergency treatment;

e.      Failing to maintain life saving equipment in working order; and

f.      Failing to fully evaluate the Decedent when he was heard moaning and crying in pain from his cell for several hours.

85.     The Estate and Co-Personal Representatives claim damages as a survivor action and claims as damages the loss of the Decedent's right to life and of the physical injuries, pain and emotional anguish and trauma he suffered prior to his death.

86.     Defendants violated their obligation to provide medical services pursuant to the Due Process Clause of the Fourteenth Amendment.

87.     Defendants had a substantive obligation not to treat detainees, like the Decedent, in a manner that reflects deliberate indifference toward a substantial risk of serious harm to health, or serious medical needs.   They did treat the Decedent with such deliberate indifference.

88.     Defendants were deliberately indifferent to Decedent's serious medical condition, which presented a sufficiently substantial risk of serious damage to future health.

89.     The Decedent's medical condition was such that a lay person would recognize a need for medical intervention.

90.     The Defendants were deliberately indifferent to the Decedent's health.  Such indifference was reckless and was easily preventable through immediate and adequate medical attention.

91.     The Defendants knew that the Decedent needed medical attention, yet they wantonly disregarded his medical needs.   Alternatively, the Defendants purposefully ignored the Decedent's medical needs.

92.    The Defendants' actions constituted a refusal to provide basic medical care to the Decedent.

93.    As a result of the Defendants' conduct and deliberate indifference to the serious medical, mental and physical health conditions and constitutional rights of the Decedent, he endured conscious pain and suffering, and Danielle Kitchin and Dana B. Kitchin suffered loss of society, comfort, companionship, solace, love, affection, and services of their father, incurred funeral and burial expenses, and continues to suffer these damages.

94.    Plaintiffs are entitled to and demand an award of reasonable attorney's fees and costs according to proof.

95.    Each individual Defendant acted recklessly or with callous indifference to the Decedent's mental and physical condition and constitutional rights and should be assessed punitive damages.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. Section 1983
### Violation of the Fourteenth Amendment to the Constitution:
### Failure to Adequately Staff and Supervise KCCF Staff
### (Against  LIBERTY,  MASON, COUNTY, KCSO, KCSD, KCCF, COMMISSIONERS and DEFENDANT DOES)
### (Monell Claim)

96.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

97.    Defendants maintained a policy, custom or practice of understaffing and/or inadequately staffing the KCCF with supervisory custody personnel.

98.    Defendants' policy, custom or practices of understaffing and/or inadequately staffing the KCCF with supervisory custody control was the moving force behind the violation of his

constitutional rights.

99.     Defendants knew or should have known that the policy, custom or practice of understaffing or inadequately staffing the KCCF with properly trained supervisors and corrections officers would cause grievous injury and/or death to the Decedent in violation of the Decedent's constitutional rights.

100.    As a proximate result of the conduct of the Defendants, the Decedent, Danielle Kitchin and Dana B. Kitchin suffered personal injury, emotional distress, and pain and suffering and incurred general damages for the deprivation of their constitutional rights.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. Section 1983**
**Violation of the Fourteenth Amendment to the Constitution:**
**Failure to Adequately Train KCCF Staff**
**(Against LIBERTY, MASON, COUNTY, KCSO, KCSD, KCCF COMMISSIONERS and**
**DEFENDANT DOES)**
**(Monell Claim)**

101.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

102.    Defendants maintained a policy, custom or practice of understaffing and/or inadequately staffing the KCCF with sufficiently trained custody and medical personnel.

103.    Defendants' policy, custom or practices of understaffing and/or inadequate staffing the KCCF with sufficiently trained custody and medical personnel was the moving force behind the violation of the Decedent's constitutional rights.

104.    Defendants failed to properly train custody and medical personnel as to the care and treatment of mentally ill prisoners and the provision of medical care for prisoners.

105.    Defendants knew or should have known that the policy, custom or practice of failing to adequately train KCCF staff would cause grievous injury to the Decedent in violation of his constitutional rights.

106.    As a proximate result of the conduct of Defendants, the Decedent, Danielle Kitchin and Dana B. Kitchin suffered personal injury and emotional distress and incurred general damages for the deprivation of their constitutional rights.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. Section 1983
### Policy Denying Appropriate Medical Care
### (Against All DEFENDANTS)

107.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

108.    Defendants maintained a policy, custom or practice of understaffing and/or inadequately staffing the KCCF with properly trained and supervised medical staff.

109.    Defendants maintained a policy, custom or practice of denying prisoners access to emergency medical care.

110.    Defendants maintained a policy, custom or practice of failing to ensure that emergency transportation was available if needed.

111.    Defendants' policies, customs or practices of understaffing and/or inadequate staffing and failing to properly supervise the medical staff, failing to provide access to care, and failing to provide lifesaving treatment and transportation was the moving force behind the violation of the Decedent's constitutional rights.

112.    Defendants knew or should have known that these policies, customs or practices would

cause grievous injury to the Decedent in violation of his constitutional rights.

113.    As a proximate result of the conduct of Defendants, the Decedent, Danielle Kitchin and Dana B. Kitchin suffered personal injury and emotional distress and incurred general damages for the deprivation of their constitutional rights.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CLAIM FOR RELIEF
### Negligent Supervision, Retention and Training
### (Correctional Health Partners)

114.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

115.    CHP owed a duty to Decedent to not cause him harm. CHP breached this duty by, *inter alia*, negligently training, retaining, and supervising CHP employees and Defendant Does.

116.    The acts and conduct of CHP employees and Defendant Does were the direct and proximate cause of death to the Decedent and violated the Decedent's statutory and common law rights as guaranteed by the laws and Constitution of the United States and Constitution of the State of Maine.

117.    CHP's negligent supervision, retention and training as described in the preceding paragraphs and in this Court caused the death of the Decedent, for which the Plaintiffs should be compensated. Litigation costs and attorney fees should be awarded. CHP  is vicariously liable.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SIXTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### (Against All DEFENDANTS)

118.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully

set forth herein.

119.     Defendants intentionally or recklessly failing to provide medical care to the Decedent, despite Decedent's persistent pleas for help was extreme, outrageous and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency and caused severe emotional distress of the Decedent prior to his death.

120.     The failure to provide medical care was the direct and proximate result of the Decedent's emotional distress prior to his death.

121.     No reasonable person could have expected to endure the emotional distress the Decedent endured as he bled internally from his ruptured spleen, crying for help.

122.     The Defendants' conduct as described in this Complaint caused the Decedent to be injured by way of pain and suffering and emotional distress, for which Plaintiffs should be compensated.

WHEREFORE, Plaintiffs prayer for relief as set forth below.

**SEVENTH CLAIM FOR RELIEF**
**Survivor Claims**
**18-A M.R.S.A.  § 3-817**
**(Against All DEFENDANTS)**

123.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

124.     Plaintiffs are entitled to bring this action and recover damages under Maine's survival statute (18-A M.R.S.A.  §3-817) for deprivation of the Decedent's civil rights.

125.     The deprivation of the Decedent's civil rights caused him pre-death suffering, injuries, mental and physical anguish and emotional distress, all caused by Defendants' actions.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**EIGHTH CLAIM FOR RELIEF**
**RESPONDEAT SUPERIOR LIABILITY**
**(Against All DEFENDANTS)**

126.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

127.    The conduct of  Defendant Does alleged herein occurred while they were on duty, in uniform, in and during the course and scope of their duties and functions as KCCF Staff, KCCF Medical Staff, CHP Staff, County employees, and while acting as an agent, officer, servant and employee of Defendants County, Commissioners, KCSO, KCCD, KCCF and CHP.

128.    As a result, Defendants County, Commissioners, KCSO, KCCD, KCCF and CHP are liable to Plaintiffs pursuant to the common law doctrine of respondeat superior.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**NINTH CLAIM FOR RELIEF**
**Substantive Due Process**
**(Against All DEFENDANTS)**

129.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

130.    The KCCF employees acted recklessly and/or with callous indifference to the Decedent's substantive due process rights by denying him essential medical care by ignoring his requests for help and failing to provide necessary medical care for a condition that was so urgent that the Decedent died in his cell.

131.    The conduct the Decedent was subjected to was conduct intended to injure him, was not

justified by any legitimate governmental interest, was outrageous, uncivilized, and intolerable in

a civilized society.

132.    The Defendants' conduct toward the Decedent makes them responsible for all damages

incurred as a result of his suffering and death.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### TENTH CLAIM FOR RELIEF
### Violation of American With Disabilities Act
### (Against All DEFENDANTS)

133.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully

set forth herein.

134.    Title II of the American With Disabilities Act (*hereinafter* "ADA") (42 USC §12132 et

seq.) prohibits State and local entities, including the Defendants from discriminating against

individuals with disabilities in the provision of programs, services, or activities.

135.    Title II of the ADA (42 USC §12132 et seq.) requires that the Defendants must make

reasonable accommodations to its programs, services, and/or activities for individuals with

disabilities to ensure that individuals with disabilities can equally effectively participate in

the programs, services or activities of the KCCF.

136.    The Defendants all knew or believed that the Decedent had mental health issues and/or

was otherwise disabled within the meaning of the ADA.

137.    The Defendants failed to make reasonable accommodations for the Decedent to allow

him to effectively participate in KCCF programs, activities, or services. Such failures

include, without limitation, failure to conduct a needs assessment when KCCF learned about

the Decedent's disability, the failure to provide medical care to the Decedent and the failure to conduct ongoing needs assessment to ensure that the Decedent's disability related needs are being met.

138.     The Defendants violated the Decedent's rights under the ADA.

139.     As a direct and proximate result of the Defendants' actions, the Decedent suffered severe and debilitating emotional distress and death.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### ELEVENTH CLAIM FOR RELIEF
**Supervisory Liability for Violation of American With Disabilities Act**
**(Against All DEFENDANTS)**

140.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

141.     Defendant Liberty was the Sheriff of Kennebec County at the time of the Decedent's death and was in charge of administering and training all staff, corrections officers and Defendants Does at KCCF.

142.     Defendant Mason was the Chief Deputy Sheriff of Kennebec County at the time of the Decedent's death, is current Sheriff of the County and was in charge of administering and training all staff, corrections officers and Defendant Does at KCCF.

143.     Defendants County, KCCF, KCSO, KCCD, Commissioners, Crockett, Rines and Jabar, were in charge of administering and training all staff, corrections officers and Defendant Does at KCCF.

144.     Defendant CHP was responsible for training its nurses.

145.    The Defendants failed to ensure that contractors and Defendant Does were properly trained in the requirements of the ADA.

146.    The Defendants have failed to properly supervise contractors and Defendant Does to ensure that contractors and Defendant Does comply with the provisions of the Act.

147.    As a direct and proximate result of Defendants' failure, Defendants violated Decedent's rights under the ADA.

148.    As a direct and proximate result of the Defendants' actions, the Decedent suffered severe and debilitating emotional distress and death.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## TWELVE CLAIM FOR RELIEF
### Punitive Damages
### (Against All DEFENDANTS)

149.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

150.    The conduct of all Defendants' behavior toward Decedent was intentional, reckless, and outrageous.

151.    The Defendants' actions and inactions were done with malice or in such a manner that malice may be implied.

152.    The Defendants' violation of the rights of the Decedent was intentional and flagrant.

153.    This case demonstrates a need for punitive damages to ensure a deterrent effect on Defendants and similarly situated correctional institutions, officers and staff.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.      For general and compensatory damages;

2.      For special and treble damages according to proof;

3.      For punitive damages against the appropriate Defendants;

4.      For funeral and burial expenses according to proof;

5.      For damages for future lost earnings and lost earnings capacity according to proof;

6.      For other losses in an amount according to proof;

7.      For costs of suit;

8.      For attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and as otherwise authorized by statute or law;

9.      For such other relief as the Court deems proper.

## VII.   JURY DEMAND

Plaintiffs hereby demand a jury trial.

Dated this 6th day of September, 2018 in Portland, Maine.

Respectfully Submitted,                        Respectfully Submitted,

/s/ Timothy E. Zerillo, Esq.                   /s/ John M. Burke, Esq.
ME Bar No. 9108                                ME Bar No. 4787
Attorney for Plaintiffs                        Attorney for Plaintiffs
Zerillo Law Firm, LLC                          Caseiro Burke LLC
1250 Forest Ave, Ste 3A                        One Union Street, Suite 400
Portland, ME 04103                             Portland, ME 04101
207-228-1139                                   207-219-8418
tim@zerillolaw.com                             jburke@caseiroburke.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| DANIELLE KITCHIN and DANA B. KITCHIN, Co-Personal Representatives and heirs of the ESTATE OF DANA A. KITCHIN,<br><br>Plaintiffs,<br><br>v.<br><br>RANDALL LIBERTY, et. al.<br><br>Defendants. | **CERTIFICATE OF SERVICE** |

  I hereby certify that on September 6, 2018, I electronically filed the CIVIL COVER SHEET, and COMPLAINT with the Clerk of Court using the CM/ECF system. I hereby certify that on September 6, 2018, I caused to be served the document(s) by hand delivery to the following non-registered participants: Randall Liberty; Ken Mason; Kennebec County; Kennebec County Correctional Facility; Kennebec County Sheriff's Office; Kennebec County Corrections Division; Kennebec County Commissioners; Patsy G. Crockett; Nancy G. Rines; George M. Jabar, II and Correctional Health Partners, LLC.

         Respectfully Submitted,

         /s/ Timothy E. Zerillo, Esq.
         ME Bar No. 9108
         Attorney for Plaintiffs
         Zerillo Law Firm, LLC
         1250 Forest Ave, Ste 3A
         Portland, ME 04103
         207-228-1139
         tim@zerillolaw.com