UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| DANIELLE KITCHIN, | ) |
|---|---|
| Co-Personal Representative | ) |
| And Heir of the Estate of | ) |
| Dana A. Kitchin, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) 1:18-cv-00356-JDL |
| RANDALL LIBERTY, | ) |
| in His Individual and Official | ) |
| Capacity as Sheriff of Kennebec | ) |
| County, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON CORRECTIONAL HEALTH PARTNERS'
SECOND MOTION TO DISMISS**

The Plaintiffs, Danielle Kitchin and Dana B. Kitchin (collectively, "the Kitchins"), bring this suit on behalf of the estate of their father, Dana A. Kitchin, for claims arising out of his death while he was in pretrial custody at the Kennebec County Correctional Facility. One of the Defendants, Correctional Health Partners, LLC, moves to dismiss the state common law claims contained in Counts Five, Seven, and Eight of the Second Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (ECF No. 59).[1] For the reasons discussed below, I grant the motion to dismiss.

---

[1] The motion to dismiss is also brought on behalf of four employees of Correctional Health Partners: Stephen Krebs, Jennifer Mix, Ann-Marie Ulrich, and Carmen Mulholland. But the Second Amended Complaint does not name these four employees as defendants in the Counts that Correctional Health Partners moves to dismiss. Thus, I treat Correctional Health Partners as the sole moving party for the purposes of this Order.

## I. DISCUSSION

This is Correctional Health Partners' second motion to dismiss. In its first (ECF No. 24), Correctional Health Partners asserted that the Kitchins' state common law claims against it for negligent supervision, retention, and training (Count Five); intentional infliction of emotional distress (Count Six); "Survivor Claims" (Count Seven); and respondeat superior (Count Eight) were barred by the Maine Health Security Act ("MHSA"), 24 M.R.S.A. § 2501 *et seq.* (West 2019). In an Order issued in June 2019 (ECF No. 53), I denied Correctional Health Partners' first motion to dismiss as to those Counts.

As explained in the June 2019 Order, the MHSA requires a plaintiff bringing an "action for professional negligence" to commence the action within three years after the cause of action accrues and to comply with certain prelitigation screening requirements. 24 M.R.S.A. §§ 2902, 2903. An "action for professional negligence" is "(1) an action for damages for injury or death, whether based upon tort or breach of contract or otherwise; (2) brought against a health care provider or practitioner, or the agent or employee of a health care provider or practitioner; (3) that arises out of the provision or failure to provide health care services." *Kitchin v. Liberty*, No. 1:18-cv-00356-JDL, 2019 WL 2527088, at *3 (D. Me. June 19, 2019) (citing 24 M.R.S.A. § 2502(6)).

In the June 2019 Order, I concluded that "the state common law claims asserted in the First Amended Complaint meet the first and third requirements—they seek to recover damages for Kitchin's death and allege that his death was caused by the [Correctional Health Partners] Defendants' failure to provide him with health

care services." *Id.* However, I found that the state common law claims did not meet the second requirement—that Correctional Health Partners was a "health care provider"—because the allegations in the First Amended Complaint did not establish that the medical services provided by Correctional Health Partners were "'prescribed by or performed under the general direction of persons licensed to practice medicine' in Maine, as required by the MHSA." *Id.* (quoting 24 M.R.S.A. § 2502(2)). Therefore, I denied Correctional Health Partners' first motion to dismiss as to the state common law claims in Counts Five, Seven, and Eight.

On August 1, 2019, the Kitchins filed a Second Amended Complaint (ECF No. 57), again bringing Counts Five, Seven, and Eight against Correctional Health Partners. Correctional Health Partners asserts that new allegations in the Second Amended Complaint establish that it qualifies as a "health care provider" under the MHSA. Thus, Correctional Health Partners moves to dismiss the state common law claims in Counts Five, Seven, and Eight on the grounds that they are "actions for professional negligence" that fail to meet the MHSA's statute of limitations and prelitigation screening requirements.[2]

The relevant new allegations relate to Stephen Krebs, a defendant named in the Second Amended Complaint. The Second Amended Complaint alleges that Krebs acted as the Chief Medical Officer of Correctional Health Partners and Supervising Physician at the Correctional Facility during the period leading up to Dana A. Kitchin's death. It further alleges that Krebs was "responsible for overseeing" the

---

[2] Correctional Health Partners moves to dismiss the survivor claim in Count Seven only to the extent that it arises out of the state common law claims asserted against Correctional Health Partners in Counts Five and Eight. Thus, Correctional Health Partners does not challenge Count Seven to the extent that it arises out of the civil rights violations alleged in Counts One, Two, Three, and Four.

provision of medical services by Correctional Health Partners in the Correctional Facility and that medical staff in the Correctional Facility "reported to Krebs" at the time of Kitchin's death. ECF No. 57 at 27. These allegations, if true, establish that the medical services provided by Correctional Health Partners during the relevant time period were "performed under the general direction of" Krebs. *See* 24 M.R.S.A. § 2502(2).

Though the Second Amended Complaint does not allege that Krebs was "licensed to practice medicine" in Maine at the time of Kitchin's death, a court may consider documents outside of the complaint if the parties do not dispute their authenticity or if they are official public records. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001); *see also Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135−36 (1st Cir. 2017). Here, Correctional Health Partners submitted a copy of Krebs' official board-sealed license verification from the Maine Board of Licensure in Medicine, and the Kitchins do not dispute its authenticity. The document indicates that Krebs was licensed to practice medicine in Maine at the time of Kitchin's death in 2014. *See* ECF No. 59-1. Because the allegations in the Second Amended Complaint establish that Correctional Health Partners' medical services were "performed under the general direction" of Krebs, and Krebs was "licensed to practice medicine" in Maine at the time of Kitchin's death, Correctional Health Partners qualifies as a "health care provider" under the MHSA. *See* 24 M.R.S.A. § 2502(2).

The Kitchins assert that Correctional Health Partners is not a "health care provider" because it is "more than just a health care provider" offering "an array of

services" aside from medical services, and "[t]he extent of the services that [Correctional Health Partners] provided to the [Correctional Facility] . . . has not yet been developed through the discovery process." ECF No. 60 at 3−4. However, the Second Amended Complaint specifically alleges that Correctional Health Partners employed doctors and nurses to provide services and "took over responsibilities for providing medical services" at the Correctional Facility in November 2014. ECF No. 57 at 24. On a motion to dismiss, I accept all allegations in the complaint as true. *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 52−53 (1st Cir. 2013). Thus, the Kitchins cannot avoid the conclusion that Correctional Health Partners is a "health care provider" by arguing that it did not provide medical services at the Correctional Facility.

Nor can the Kitchins avoid this result by citing to *D.S. v. Spurwink Services, Inc.*, 65 A.3d 1196 (Me. 2013). In *Spurwink*, a licensed mental health agency provided services under the general direction of licensed clinical social workers, not licensed physicians. *Id.* at 1201 n.9. The only licensed physician associated with Spurwink was a consultant, not a supervisor or employee, and he did not prescribe medical services. *Id.* at 1201−02. Here, by contrast, the allegations in the Second Amended Complaint establish that medical services in the Correctional Facility were performed under the general direction of Krebs, a licensed physician.

Notwithstanding these differences, the Kitchins argue that Correctional Health Partners cannot be considered a "health care provider" after *Spurwink* because the state common law claims in Counts Five, Seven, and Eight do not name any individual "health care practitioners" as defendants. But this argument

5

misreads *Spurwink*. That case explains that the terms "health care provider" and "health care practitioner" are independent. *Spurwink*, 65 A.3d at 1201 & n.8. Whether an entity is a "health care provider" depends on whether "medical services are prescribed by or performed under the general direction of persons licensed to practice medicine" in Maine. *Id.* at 1201 & n.9 (citing 24 M.R.S.A. § 2502(2)). It does not depend upon whether the employees of the entity qualify as "health care practitioners." *Id.* at 1201 (citing 24 M.R.S.A. § 2502(1-A)). Nor does it depend on whether the action names any individual "health care practitioners" as defendants: The term "'health care practitioner' . . . has no application" to whether an entity qualifies as a "health care provider." *See id.* at 1201 n.8 (quoting 24 M.R.S.A. § 2502(1-A)). Thus, even though the state common law claims in Counts Five, Seven, and Eight do not name any defendants who qualify as "health care practitioners," the allegations related to Krebs establish that Correctional Health Partners qualifies as a "health care provider" under the MHSA, as discussed above.

Though the Kitchins also cite *Salerno v. Spectrum Medical Group, P.A.*, 215 A.3d 804 (Me. 2019) to support the argument that Correctional Health Partners is not a "health care provider," that case is inapposite. *Salerno* dealt with whether an action "aris[es] out of the provision or failure to provide health care services," not whether the action was brought against a "health care provider." *Id.* at 811−12. These two questions are "clear and distinct." *Id.* at 811 (citing *Spurwink*, 65 A.3d at 1201−02).

To the extent that the Kitchins cite *Salerno* to challenge the June 2019 Order's conclusion that the state common law claims in Counts Five, Seven, and Eight arise

6

out of Correctional Health Partners' failure to provide health care services, this argument also fails. The state common law claims in the Second Amended Complaint are nearly identical to those in the First Amended Complaint, and the Kitchins concede that the Second Amended Complaint "realleges most of the same factual allegations as . . . [the] First Amended Complaint, while adding additional facts and additional defendants." ECF No. 60 at 2. Thus, I conclude that the Second Amended Complaint, like the First, alleges that Kitchin's death was caused by Correctional Health Partners' failure to provide health care services.

Again, *Salerno* does not change the result. In that case, the Law Court held that the defendant's allegedly negligent placement of a rubber mat in the locker room of a physical therapy facility was a "circumstance unrelated to the provision of health care." *Salerno*, 215 A.3d at 811. The Kitchins argue that Correctional Health Partners' alleged negligent supervision, retention, and training of its employees are similarly unrelated to the provision of health care because these are "administrative" services, not "actual medical services." ECF No. 60 at 5. But the Second Amended Complaint alleges that these "administrative" failings caused the failure to provide medical care which led to Kitchin's death. Thus, unlike the alleged negligence in *Salerno*, the alleged negligence in the Second Amended Complaint directly relates to and thus "arise[s] out of" the failure to provide health care services. *See* 24 M.R.S.A. 2502(6).

Because this is an "action for damages for injury or death," and I have determined, based on the allegations in the Second Amended Complaint, both that Correctional Health Partners is a "health care provider" and that the state common

7

law claims in Counts Five, Seven, and Eight "aris[e] out of the . . . failure to provide health care services," I conclude that these claims constitute "actions for professional negligence" under the MHSA. *See* 24 M.R.S.A. 2502(6).

The only remaining question is whether the Kitchins complied with the MHSA's statute of limitations and prelitigation screening requirements. With respect to the statute of limitations, the MHSA provides that "actions for professional negligence must be commenced within 3 years after the cause of action accrues." 24 M.R.S.A. § 2902. "[A] cause of action accrues on the date of the act or omission giving rise to the injury." *Id.* Here, the cause of action accrued, at the latest, on December 12, 2014, the date of Dana A. Kitchin's death. The Kitchins commenced this action when they filed their complaint (ECF No. 1) with the Court on September 6, 2018—nearly four years later. *See* Fed. R. Civ. Pro. 3. Because the Kitchins did not commence this action within three years after the cause of action accrued as required by the MHSA, the state common law claims against Correctional Health Partners in Counts Five, Seven, and Eight must be dismissed. Accordingly, I need not reach the additional question of whether the Kitchins complied with the MHSA's prelitigation screening requirements.

### III. CONCLUSION

For the reasons stated above, it is **ORDERED** that Defendant Correctional Health Partners, LLC's Motion to Dismiss (ECF No. 59) is **GRANTED**.

**SO ORDERED.**

**Dated: November 22, 2019**

                                            **/s/ JON D. LEVY**
                                    **CHIEF U.S. DISTRICT JUDGE**